JUDGE MARRERO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 13 CV 967

| | |
|---|---|
| LAURA BIEGHLER and MARIA LUCIA JIMENEZ, | Index No. |
| Plaintiffs, | |
| vs. | COMPLAINT |
| JPMORGAN CHASE BANK N.A., CHASE BANK USA, N.A., and JPMORGAN CHASE & CO., | JURY TRIAL DEMANDED |
| Defendants. | |

*RECEIVED FEB 11 2013 U.S.D.C. S.D.N.Y. CASHIERS*

Upon information and belief, and upon the diligent investigation of their counsel, Plaintiffs LAURA BIEGHLER and MARIA LUCIA JIMENEZ (together, "Plaintiffs") bring this class action on behalf of themselves and all others similarly situated against defendants JPMORGAN CHASE BANK N.A., CHASE BANK USA, N.A., and JPMORGAN CHASE & CO. (collectively, "Chase"), and state as follows

## NATURE OF ACTION

1.     This class action arises from Chase's failure to honor its own "Same Day Payment Guarantee," pursuant to which Chase promised that payments made on-line from a Chase deposit account to a Chase credit card account (including all credit card accounts from banks Chase acquired) (collectively, the "Chase Visa Accounts") would be credited on the same day.  In fact, for a period of time known only to Chase, but believed to be from at least 2006 through 2011, Chase programmed its computer system in such a way that payments were debited from account holders' deposit accounts immediately, but not credited to their Chase Visa Accounts until the next day or even later.   As a result, Plaintiffs and all members of the proposed class suffered injuries including, but not limited to (a) additional interest payments on their credit card accounts; (b) late fees for payments made on time but treated as late; (c) interest rate increases on Chase "zero interest" and "low interest" promotional checks;  (d) reduced

1

over-draft protection and/or increased over-draft fees resulting from Chase's policy of using available Chase Visa credit as a source and basis for over-draft protection; and (e) damage to their credit ratings resulting from payment histories that falsely showed timely payments as late payments.

2.      Plaintiffs seek to recover damages on behalf of themselves and all others similarly situated as compensation for these injuries. Plaintiffs also seek restitution for Defendants' unjust enrichment during the period when their payments were debited from their deposit accounts, but not yet credited to their Chase Visa Accounts (the "Float Period").

## JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d), because this is a class action lawsuit in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and a substantial number of the members of the proposed class are citizens of a state different from those of Defendants.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because JPMorgan maintains its headquarters in this district, Plaintiffs Jimenez resides in this district, and a substantial portion of the events and omissions giving rise to this action occurred in this district.

5.      Venue is further proper in this Court because, pursuant to a Memorandum of Settlement dated November 20, 2009, in an action captioned *Ross v. Bank of America N.A. (USA) et al.*, 05-cv-7116-WHP (S.D.N.Y.), Chase removed all requirements that holders of Chase credit cards (including, on information and belief, all Chase Visa Account cards) arbitrate disputes with Chase and further agreed not to impose or enforce any arbitration clause with respect to such accounts for a period of at least three and a half years from January 2010.

## PARTIES

6.      Plaintiff Maria Lucia Jimenez ("Jimenez") is a citizen of the State of New

York residing in Jackson Heights, Queens County, New York.

7.    Plaintiff Laura Bieghler ("Bieghler") is a citizen of the State of California residing in the City of La Palma.

8.    Defendant JPMorgan Chase & Co. ("JPMorgan") is a Delaware corporation with its headquarters at 270 Park Ave., New York, New York. JPMorgan is a financial holding company created by the December 31, 2000, merger of J.P. Morgan & Co. Incorporated with The Chase Manhattan Corporation. Subsequently, J.P. Morgan & Co. merged with and/or acquired Bank One Corporation (2004), Bear Stearns Companies, Inc. (2008), and Washington Mutual, Inc. (2008). As of 2011, Chase had over $2 trillion in assets and shareholder equity of over $180 billion (symbol "JPM").

9.    Defendant JPMorgan Chase Bank, N.A ("Chase Bank"), is a federally-chartered national bank, with its headquarters in Columbus, Ohio. Chase Bank is a wholly-owned bank subsidiary of JPMorgan.

10.    Defendant Chase Bank USA, N.A. ("Chase USA") is a federally-chartered national bank, with its headquarters in Delaware. Chase USA is a wholly-owned bank subsidiary of JPMorgan.

## GENERAL ALLEGATIONS

**Chase's Same Day Payment Guarantee**

11.    At some time beginning in or prior to 2006, Chase represented that, as long as a Customer input his or her transfer instructions ("Funds Transfer Instructions") into the Chase computer system before 8:00 p.m. Eastern time on business days (the "Cutoff Time"), the funds transferred would be posted/credited to Customers' Chase Visa Accounts and would reduce the outstanding credit card balance on that same day (the "Same Day Payment Guarantee").

12.    Chase advertised this Same Day Payment Guarantee and included it in the terms and conditions of its contracts with Customers.

13.    Chase included the Same Day Payment Guarantee on the Chase On-Line

Bill Payment Delivery Schedule (the "On-Line Contract"), which specifically represents that "[p]ayments to credit cards issued by us will be credited to the account the same day *if we receive your instructions before 8 p.m. Eastern Time on Business Days*." (emphasis added).

14.     When Customers used Chase's On-Line bill payment feature, the computer system generated a "finished" receipt for the Customer, which stated that funds transferred from Customers' deposit accounts to Customers' Chase Visa Accounts by 8 p.m. on business days would be posted/credited to their Chase Visa Accounts on that same day.

15.     Chase not only represented that it would credit payments on the same day it received Funds Transfer Instructions, as long as those instructions were received prior to the Cutoff Time, but also contractually obligated itself to do so.

**Chase's Computer Was Not Programmed to Honor the Same Day Payment Guarantee**

16.     Despite its guarantee that it would credit payments made before the Cutoff Time the same day they were made, Chase did not program its computer system to honor the Same Day Payment Guarantee.

17.     Instead, funds subject to Customers' Transfer Instructions were not posted/credited to Chase Visa Accounts as promised.   Accordingly, Chase has wrongfully created a time trap during which Customers' On-Line Transfer Instructions which have been input into the Chase computer system are not posted/credited to their Chase Visa Accounts until the next business day, rather than the same day, as promised.   Chase's online payment service screens show that Customers' payments were debited/withdrawn from their deposit accounts without any corresponding post/credit to their credit card accounts on that day.

18.     Chase was fully capable of honoring its Same Day Payment Guarantee, but chose not to.

19.     Chase programmed its computer system to debit/withdraw funds from

4

its Customers' deposit accounts at all times, 24 hours a day, seven days a week.  As soon as a Customer inputs Funds Transfer Instructions into the Chase computer system, Chase immediately debits/withdraws the specified funds from the Customer's deposit account and assigns a "Transaction number," even when the Customer inputs the Funds Transfer Instructions during non-business hours, non-business days and Holidays.

20.    However, Chase delays doing anything further to finish processing its Customer's Funds Transfer Instructions until 7:00 a.m. on the next business day.  Chase thereby splits the time when the funds are debited from the deposit account from the time when the funds are credited to the Chase Visa accounts; this interval is known as the "Float Period."

21.    Specifically, after Chase has pulled these instructed funds out of its Customer's deposit account, Chase takes exclusive possession, custody and control of these funds, converts these funds, and likely posts/credits these funds to one or more Chase Account(s) (the "Chase Float Account(s)"), while falsely representing to its customers that their funds are somehow in a time consuming cyber journey on the Chase computer system, where it is "in process", sent on the "send on" date, eventually "delivered" to Chase Visa, and thereafter credited to the customer's Chase Visa account, at which point the customers' Funds Transfer,  per the Funds Transfer Instructions, are "complete."

22.    Eventually, Chase debits/withdraws the Customers' funds from its Chase Float Account(s), assigns them a new transaction number, and sends them to Chase Visa in order to have Chase Visa post/credit them to the Customer's Chase Visa account balance.

23.    Chase has programmed the Chase computer so that the posting described in ¶ 22 is the first time the transferred funds can be seen by Chase Visa's employees on their computer screens. The Chase Visa employees do not know what the New Transaction Number signifies, and do not know anything about the account(s) from

which the funds were sent.

24.    Chase thereby makes an immediate debit from the Customer's deposit account, and then artificially delays posting/crediting the Customer's transferred funds to the Customer's Chase Visa account to pay down its credit card balance.

25.    Chase is fully capable of debiting/withdrawing these funds from the Customer's deposit account and simultaneously posting/crediting these funds to the Customer's Chase Visa account balance.  Indeed, Chase has made these simultaneous debit/credit transactions on the Chase computer system under different circumstances.

26.    Chase uses the monthly Chase Visa statements, which it mails to its Chase Visa cardholders, to hide its conversion and floating of the Customer's transferred funds.  Specifically, these Chase Visa statements only disclose to the Customers the Transaction date on which Chase debited/withdrew the transferred funds from the Customer's deposit account but fail to disclose the date on which these funds were actually posted/credited to the Customer's Visa account.

27.    At times, the Customer's monthly Visa statement conveys the false impression that Transactions in which funds were debited/withdrawn from a Customer's deposit account at the same time on the same day, but were posted/credited to the Customer's Visa account on different days,  were both posted on the same day, which is always listed on the Customers' monthly Visa Statements as the date on which the first Transaction which was posted, sometimes a day or more before the second Transaction was actually posted.

**The Consequences of Chase's Failure to Honor Its Same Day Payment Guarantee**

28.    Because of failure to honor its Same Day Payment Guarantee, Customers' credit card accounts were not credited/paid and did not have their outstanding balances reduced, until at least the next business day, at the earliest.  Thus, there was a time gap during which Chase held a portion of Customers' funds - the amount input for payment to the credit card account -- in Chase's sole possession, custody and control.

6

During this period, Customers did not earn interest on this money, nor was the money used to stop interest charges on their credit card balances from continuing to accrue. Moreover, while Customers' interest charges continued to accrue in violation of the Same Day Payment Guarantee, Chase had unfettered use of their money.

29. The consequences of Chase's failure to honor the Same Day Payment Guarantee were made worse by Chase's practices with respect to two other products, Chase's low-interest promotional checks and Chase's overdraft line of credit ("LOC).

30. Chase mailed low-interest promotional checks to its Chase Visa Customers. These checks were in fact credit advances that carried an extremely low promotional interest rate on the check balance, *as long as the Customers' corresponding Chase Visa accounts were timely paid.* But these Chase low interest promotional checks provided that if the Customer's Chase Visa Account payment was late by even one day, the checks' low promotional interest rates would be automatically hiked to higher, often double digit, interest rates; there was no grace period.

31. Because Chase programmed its computer system to delay, for at least one day, certain payments made before the Cutoff Time, timely payments to Customers' Chase Visa Accounts were treated by Chase as late payments.  Chase then used its own failure timely to credit its Customers' payments to hike drastically the interest rate on the promotional checks, often to double-digit interest rates.

32. Chase thereby increased the money it made from Customers' subsequent payments of these drastically higher rates.

33. The Chase checking depository accounts had an overdraft line of credit ("Checking LOC") protection program pursuant to which Chase honored and paid Customer checks which exceeded their checking account balances up to their LOC limits (the "Overdraft LOC").

34. Historically, the Checking LOC amount was secured with Customer funds which were maintained in their savings accounts and other non-checking depository

accounts.

35.     Chase changed its Checking LOC so that the Overdraft LOCs were secured by the Customers' Chase Visa accounts rather than by the funds in their non-checking depository accounts.

36.     When Customers wrote checks against their Checking LOC, Chase honored and paid them up to the Customers' Chase Visa credit limit.

37.     As described above, due to Chase's wrongful practices, Customer funds transferred/deposited into their Chase Visa accounts were floated and not timely credited/posted by the Chase computer system to the Chase Visa accounts.

38.     This delayed crediting/posting to the Chase Visa accounts caused Customers' Chase Visa balances to remain artificially high, and their corresponding available credit on their Chase visa accounts to be wrongfully and artificially low.

39.     As a result, Chase wrongfully dishonored/bounced Customers' checks which were written in dollar amounts protected by the Overdraft LOC Program as secured by their available credit on their Chase Visa accounts.   This resulted in Customers incurring injury and damages, including but not limited to returned check fees, bank analysis charges on deposit account statements, other bank fees and charges, damage to Customer credit reports from bounced checks, consequent credit card interest rate increases, and damage to Customers' business relationships with their payees from wrongfully dishonored/bounced checks.

40.     Besides the injuries incurred by its Customers, Chase was itself further unjustly enriched by its failure to honor the Same Day Payment Guarantee.  During the Float Period, when funds have been debited from a Customer's deposit account, but have not yet been credited to the Customer's Chase Visa Account, Chase converted and had use of the Customer's money and was able to earn money for itself.  For transactions entered prior to 8 p.m., Chase would not have been able to have use of the Customer's money during the Float Period if it had honored the Same Day Payment

Guarantee.

41.    Chase's failure to honor the Same Day Payment Guarantee was a breach of Chase's contract with its Customers. Chase marketed and advertised to Customers that the convenience of their on-line funds transfers and the Same Day Payment Guarantee were reasons why a potential customer should choose Chase's banking and credit card services over competitor financial institutions.

42.    Chase's representations about the Same Day Payment Guarantee were false and misleading, and were known by Chase to be false and misleading at the time they were made, because Chase programmed its computer system to artificially split simultaneous debit/credit transactions so that payments would not, in fact, be credited the same day.

43.    Chase was unjustly enriched by its conduct, because it had unfettered use, for investments or otherwise, of Customers' money during the float period.

44.    Plaintiffs and the members of the proposed class have been damaged as a result of Chase's contract breaches, material misrepresentations and omissions, including but not limited to its Same Day Payment Failure, causing injuries including:

   a. Direct financial expenses associated with late payments on Chase's credit card accounts, including but not limited to, fees, penalties, additional interest charges, and interest rate increase;

   b. Lost interest on funds in Customers' bank accounts;

   c. Drastically hiked double-digit interest rate payments by Customers on their promotional low interest checks.

   d. Consequential injuries, including injury to Customers' credit ratings as a result of payments that were timely made but treated by Chase as late.

45.    Chase is liable to Plaintiffs and the members of the proposed class in monetary relief for damages as a result of Chase's foregoing acts, including restitution for Defendants' unjust enrichment, as well as Plaintiffs' statutory interest, attorneys' fees

9

and costs of this action.

**Factual Allegations Concerning Plaintiffs**

46.     Bieghler and Jimenez are Customers of Chase's banking, checking, and credit card services.  Plaintiffs used Chase's on-line payment system to pay their Chase Visa Accounts with funds from their deposit accounts. On several occasions, each Plaintiff timely submitted payments to her Chase Visa Account prior to the Cutoff Time, but the payments were not credited on the same day they were submitted.  Each time this occurred, Plaintiffs were penalized with additional late fees and/or interest rate increases.

47.     Jimenez was a Customer of Chase's banking, checking, and Chase Visa card services.  In addition to making Chase on line transfers from her Chase deposit accounts to her Chase Visa account, Jimenez also used Chase's low-interest promotional checks, and was damaged by being wrongfully forced into late payment defaults, resulting in having to pay the wrongfully hiked extremely high double digit interest rates to Chase on these Chase promotional checks.

## CLASS ACTION ALLEGATIONS

48.     Plaintiffs bring this action on behalf of themselves and a class (the "Nationwide Class") consisting of all persons, corporations, or entities in the United States who:

> a.  maintained a banking, checking, or other depository account with Chase as well as one or more Chase Visa accounts;
>
> b.  used Chase's on-line payment service to transfer funds from a Chase deposit account to a Chase Visa account; and;
>
> c.   on at least one occasion, timely input Funds Transfer Instructions into the Chase computer system to transfer funds from a Chase deposit account to a Chase Visa account that was not timely credited/posted, in violation of the On-Line Contracts and/or in violation of the Customers' Funds

10

Transfer Instructions, to their Chase Visa account.

49.     Bieghler further brings this action on behalf of a sub-class consisting of members of the Nationwide Class who reside in the State of California (the "California Sub-Class").

50.     Jimenez further brings this action on behalf of a sub-class of members of the Nationwide Class who reside in the State of New York.

51.     Excluded from the above defined Nationwide Class and sub-classes are Plaintiffs' Counsel, Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, attorneys and directors; government entities or agencies, its affiliates, employees, officers, agents, and directors in their governmental capacities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

52.     Plaintiffs are members of the Nationwide Class, and each plaintiff is a member of the sub-class she seeks to represent.

53.     All of the requirements for class certification are satisfied.

54.     Although Plaintiffs do not know the exact size of the Nationwide Class, based on the nature of the trade and commerce involved, Plaintiffs believe that members of the Nationwide Class number in the hundreds of thousands, if not potentially millions, of current and prior Chase Customers who utilized Chase's on-line payment services.  The class is thus so numerous that joinder of all members is impracticable. The precise number of class members can be determined through appropriate discovery.

55.     There are questions of law and fact common to the claims of all class members, and resolution of these common questions of law and fact will result in resolution their claims; these common questions of law and fact include but are not limited to the following:

a.  Whether the Chase computer's on-line payment system was at any point

11

programmed to fail to credit/post payments to Chase Visa accounts in a timely fashion when Customers input Funds Transfer Instructions before the Cutoff Time;

b.   Whether the Chase computer's on-line payment system was at any point programmed to delay the crediting/posting Customer payments to Chase Visa Accounts on the same day the payments were debited from Customers' bank account;

c.   Whether the Chase computer's on-line payment system was at any point programmed to artificially split debits and simultaneous credits from Chase deposit accounts to Chase Visa Accounts ;

d.   Whether the Chase computer's on-line payment system, in conjunction with the Chase Visa promotional check program, wrongfully deprived Chase Customers of promotional interests, and charged them excessive interest rates based on mischaracterizing timely credit card payments as "late";

e.   Whether the Chase computer's on-line payment system was at any point programmed to violate the On-line Contracts' Same Day Payment Guarantee;

f.   Whether Chase breached the terms of the On-line Contracts' Same Day Payment Guarantee;

g.   Whether Chase's marketing of and solicitation for its Same Day Payment Guarantee constituted false or misleading advertising in violation of New York General Business Law § 349 or § 350;

h.   Whether Chase's marketing of and solicitation for its Same Day Payment Guarantee constituted unlawful, fraudulent, and/or unfair business acts and practices in violation of California Business and Professions Code § 17200, et seq.

i.  Whether Chase failed timely to disclose or provide Customers with information concerning Defendants' Same Day Payment Guarantee through commercially reasonable methods;

j.  Whether Defendants made uniform, false or misleading representations that Customers would not be charged late fees and other penalties for Payment Transactions made prior to the Cutoff Time;

k.  Whether Chase knew or should have known, by the exercise of reasonable care, that its solicitations, advertisements, and other representations regarding the Same Day Payment Guarantee were false or misleading;

l.  Whether Chase had use of Customers' funds during the Float Period.

m.  Whether Chase converted Customers' funds during the Float Period.

n.  Whether Chase made money for its own account on Customers' funds during the Float Period.

o.  Whether Chase was unjustly enriched by its use and/or conversion of Customers' funds by investment of those funds for Chase's own account, by additional late fees, penalties, or interest rate increases, or otherwise;

p.  Whether the Customers' Funds Transfer Instructions were strictly followed by Chase on its computer system's on-line payment service.

q.  Whether the Chase On-line Contracts contained misleading, contradictory and/or confusing language regarding Customers' on-line transfers from their Chase deposit accounts to their Chase Visa accounts.

r.  Whether the Transaction Number assigned to a Customers' fully inputted Funds Transfer Instructions, was used throughout Chase's processing of the Transaction contained in the Customers' Funds Transfer Instructions.

s.  Whether Chase changed the Transaction Number it assigned to the transaction contained in the Customers' Funds Transfer Instructions to a second or additional transaction number, after Chase had processed the

debit/withdrawal of funds from the Customers' deposit account, but before Chase processed the corresponding credit/post of those funds to the Chase Visa account to pay down the balances owed by the Customers, for a good faith, commercially reasonable purpose.

t.  Whether Chase subsequently changed the second or additional transaction number back to the first Transaction Number in the Chase Visa statements which Chase mailed monthly to its Customers, for a good faith, commercially reasonable purpose.

u.  Whether Chase caused the Chase Visa monthly statements it mailed to its Customers to conceal, obscure, mislead and/or fail to clearly disclose the actual date when Customers' funds transfers were credited/posted to the Customers' Chase Visa Accounts to pay down the Chase Visa balances the Customers owed to Chase.

v.  Whether Chase caused the Chase Visa monthly statements it mailed to its Customers to disclose only the initial Transaction date, ie., the date Chase debited/withdrew funds from the Customers' deposit accounts, and to fail to disclose the date when said transferred funds were actually credited/posted to the Customers' Chase Visa accounts to pay down the Chase Visa balances the Customers owed to Chase.

w.  Whether Plaintiffs and the other members of the Nationwide Class and the sub-classes are entitled to damages.

56.  Plaintiffs' claims are typical of the claims of the Nationwide Class and the sub-classes.  Plaintiffs and the other members of the Class were and are similarly or identically harmed by Chase's failure to honor the Same Day Guarantee.

57.  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Nationwide Class and the sub-classes.

58.  There are no material conflicts between the claims of the representative

14

Plaintiff and the members of the classes that would make class certification inappropriate.

59.     Plaintiffs have retained competent and experienced counsel in complex class actions and consumer actions.   Counsel is committed to the vigorous prosecution of this action.

60.     This suit may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) because, absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual Customers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated Customers, substantially impeding their ability to protect their interests, while  establishing incompatible standards of conduct for Chase.

61.     This suit may also be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class, resolution of these common questions of law and fact will result in the resolution of the claims herein, and a class action is superior to other available means for the fair and efficient adjudication of this dispute.

62.     Common questions will predominate because Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members.   Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

63.     A class action is superior to any other available means for the fair and

efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the members of the classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for class members to individually seek redress for Defendants' wrongful conduct. Even if the class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. Given the similar nature of the Class members' claims, class treatment of this litigation will ensure that all claims and claimants are before this Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this action.

64.     Failure to certify the class will result in wrongful injuries to Chase customers, who will then have absolutely no remedies and no redress.

65.     Class certification is further proper because, pursuant to a Memorandum of Settlement dated November 20, 2009, in an action captioned *Ross v. Bank of America N.A. (USA) et al.*, 05-cv-7116-WHP (S.D.N.Y.), Chase removed all Class Action Waivers applicable to holders of Chase credit cards (including, on information and belief, all Chase Visa Account cards) and further agreed not to impose or enforce any Class Action Waiver with respect to such accounts for a period of at least three and a half years from January 2010.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Breach of Contract

#### (on behalf of the Nationwide Class)

66.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

16

67.     Pursuant to the Same Day Payment Guarantee, Chase was contractually obligated to credit Chase Visa Accounts on the same day it received Funds Transfer Instructions, as long as the Funds Transfer Instructions were received by 8 p.m. Eastern time.

68.     Chase breached its contract failing to credit to Chase Visa Accounts payments for which Funds Transfer Instructions were input prior to 8 p.m. Eastern time; instead, when Customers input their Funds Transfer Instructions after 4 p.m. Eastern time, Chase immediately debited their deposit accounts, but failed to credit their Chase Visa Accounts until the next business day at the earliest.

69.     As a consequence of Chase's breach, Plaintiffs and the members of the Nationwide Class incurred late fees and/or additional interest charges on Chase Visa Accounts for which payments were timely made, but treated as late by Chase because the payments were wrongfully not credited until the next business day; were charged excessive interest rates on balances derived from promotional checks, because the interest rate on the check balances was dependent on timely payment of the Chase Visa Accounts, but Chase delayed credit payments, so that timely payments were wrongfully treated as late; and were offered less over-draft protection, and incurred unwarranted over-draft fees, because their Chase over-draft protection was linked to the balance of their Chase Visa Accounts, and Chase wrongfully delayed crediting payments to those accounts.

70.     As a consequence of its own breach, Chase was unjustly enriched by the excess fees and interest it charged Plaintiffs and the members of the Nationwide Class, and also by the use it made of Plaintiffs' fund during the Float Period.

71.     By reason of the foregoing, Chase is liable to Plaintiffs and the members of the Nationwide Class in an amount to be determined at trial but believed to be no less than $25,000,000.

SECOND CLAIM FOR RELIEF

**Quasi-Contract or Implied-In-Law Contract**

(on behalf of the Nationwide Class)

72.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

73.     Chase entered into a quasi-contract or alternatively an implied-in-law contract with Plaintiffs and members of the Nationwide Class to take reasonable steps to adhere to the Same Day Payment Guarantee.

74.     Plaintiffs and members of the Nationwide Class conferred a benefit upon Chase by providing Chase with valuable personal and financial information, funds, deposits, and monies so as to allow Chase to engage in banking business, contact, transmit billing information, advertise, promote, send email distributions, mail, and engage in commerce or solicit commercial transactions to further Chase's business interests with respect to Plaintiffs and members of the Nationwide Class.

75.     Chase impliedly and expressly through use and services provided accepted the corresponding obligation to correctly and timely process funds transmitted by Plaintiffs and members of the Nationwide Class.

76.     As a result of Chase's breach of its Same Day Payment Guarantee, Plaintiffs and members of the Nationwide Class suffered as a direct and proximate cause the damages described above.

77.     By reason of the foregoing, Chase is liable to Plaintiffs and the members of the Nationwide Class in an amount to be determined at trial but believed to be no less than $25,000,000.

THIRD CLAIM FOR RELIEF

**Negligent Misrepresentation**

(on behalf of the Nationwide Class)

78.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

79.     Chase assumed a duty of care deriving from the nature of services provided and the nature of the relationship between Chase, on the one hand, and Plaintiffs and the members of the Nationwide Class on the other.   Thus, Chase was required it to exercise reasonable care to provide honest and accurate information to its Customers to avoid having those Customers incur additional expenses and injuries.

80.     Chase specifically and expressly indicated to members of the Nationwide Class that Customers' checking, banking, depository, and credit card account balance information that is published on-line, by phone, and in-bank are accurate and reliable, when in fact they were inaccurate and unreliable.

81.     Chase breached its duty of care by negligently misrepresenting that Funds Transfer Instructions would be processed pursuant to the Same Day Payment Guarantee.   In fact, upon input of Funds Transfer Instructions, Chase would immediately debit/withdraw Plaintiffs' and class members' checking, banking, and depository accounts, but did not simultaneously, or at a commercially reasonable time thereafter, credit/post said transferred funds to Customers' Chase Visa Accounts. Through the Same Day Payment Guarantee, and the "finished" message of the on-line payment system, Chase misled Plaintiffs and the members of the Nationwide Class to believe that their credit card payments had been made when, in fact, the payment would not be credited that day.

82.     Chase's failure to exercise reasonable care and use commercially reasonable means to fairly and accurately represent the accounts balance for Plaintiffs and the members of the Nationwide Class, was the direct and proximate cause of the injuries suffered by Plaintiffs and the members of the Nationwide Class described above.

83.     By reason of the foregoing, Chase is liable to Plaintiffs and the members of the Nationwide Class in an amount to be determined at trial but believed to be no less than $25,000,000.

FOURTH CLAIM FOR RELIEF

Conversion

(on behalf of the Nationwide Class)

84.    Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

85.    Plaintiffs and the members of the Nationwide Class own and have the right to possess the money that is in their bank depository accounts with Chase.

86.    Chase interfered with Plaintiffs' and the Nationwide Class Members' possession of this money by wrongfully taking said money directly from their Chase deposit accounts immediately upon Customers' input of their Funds Transfer Instructions into the Chase computer, prior to the Cutoff Time, without immediately, or within a commercially reasonable time, crediting/posting/depositing the funds in Plaintiffs' and the Nationwide Class Members' Chase Visa Account.

87.    Plaintiffs and the members of the Nationwide Class never consented to Chase's taking of their funds for any purpose other than to make payments on their Chase Visa Accounts either immediately or within a commercially reasonable time.  On the contrary, because Chase specifically represented that payments made by the Cutoff Time would be credited to the Chase Visa Accounts on the same day, Plaintiffs and the members of the Nationwide Class sent their Funds Transfer Instructions prior to the Cutoff Time with the specific understanding that the funds would go directly to their Chase Visa Accounts and would not be diverted for use by Chase.

88.    Plaintiffs and the members of the Nationwide Class have been damaged by Chase's wrongful taking of their funds and the improper withholding of such funds contrary to Plaintiffs' and the Nationwide Class members' Funds Transfer Instructions.

89.    By reason of the foregoing, Chase is liable to Plaintiffs and the members of the Nationwide Class in an amount to be determined at trial but believed to be no less than $25,000,000.

FIFTH CLAIM FOR RELIEF

**Unjust Enrichment**

(on behalf of the Nationwide Class)

90.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

91.     Chase unjustly enriched itself to the detriment of Plaintiffs and the Class Members by causing Chase to receive payments for a banking service that it did not properly administer.

92.     Chase further unjustly enriched itself to the detriment of Plaintiffs and the Class Members because, contrary to the representations in the Same Day Guarantee, Chase had use of Class Members' funds during the interval between the point at which the funds were debited/withdrawn from Class Members' Chase deposit accounts and the time the funds were credited/posted to Class Members' credit card accounts. During this time, Chase both did not pay interest on these funds and continued to accrue interest on the unpaid balance in the credit card accounts.

93.     Plaintiffs and Class Members have been injured by paying additional fees and expenses due to Chase's improperly administered on-line payment system.

94.     Chase's wrongful retention of funds belonging to Plaintiffs and Class Members during the Float period, and Chase's retention, for its own account, of any and all monies which it may have earned on such funds, must be disgorged from Chase and returned to Plaintiffs and the Class Members.

95.     As a result of Chase's deceptive misleading practices, advertising, marketing and sale of its banking services, Chase has been further enriched at the expense of its Customers.  Against public policy, by floating, investing, and generating monies for Chase's own account and benefit, Chase improperly extracted penalties and fees from Customers' credit card accounts, withheld and enjoyed the benefit of holding Customers' funds, at times up to three days, without reasonable justification; and

misrepresented and falsely advertised the accuracy and reliability of the their on-line payment system.

96.   By reason of the foregoing Chase is liable to disgorge its unjust enrichment to the Plaintiffs and the members of the Nationwide Class.

SIXTH CLAIM FOR RELIEF

**Deceptive Acts and Practices under New York G.B.L. § 349**

(on behalf of the New York Sub-Class)

97.   Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

98.   Chase willfully or knowingly engaged in deceptive and misleading representations and omissions aimed at causing reasonable consumers and the public to be deceived into thinking that Chase would actually process Payment Transactions pursuant to its Same Day Payment Guarantee.

99.   Chase's conduct constitutes deceptive acts or practices in the conduct of business, trade or commerce.   Chase's unlawful conduct affects consumers, and constitutes unfair acts or practices that have the capacity to, and that do, deceive consumers.

100.   As a direct and proximate cause of Chase's deception to Customers and the public, Jimenez and the members of the New York Sub-Class have suffered harm and damages as described in the foregoing.

101.   By reason of the foregoing, Chase is liable to Jimenez and the members of the New York Sub-Class for all damages suffered by Jimenez and the members of the New York Sub-Class that are available at law, in an amount to be determined at trial but believed to be no less than $25,000,000.

SEVENTH CLAIM FOR RELIEF

**False Advertising under New York General Business Law § 350**

(on behalf of the New York Sub-Class)

102.   Plaintiffs incorporate the allegations within all prior paragraphs within this  Complaint as if they were fully set forth herein.

103.   Chase willfully or knowingly engaged in deceptive and misleading representations through false advertisement aimed at deceiving reasonable consumers and the public into believing that Chase would fully process Payment Transactions in accordance with Plaintiffs' Funds Transfer Instructions pursuant to the Same Day Payment Guarantee.

104.   As a direct and proximate cause of Chase's deception to Customers and the public, Jimenez and the members of the New York Sub-Class have suffered harm and damages as described in the foregoing.

105.   By reason of the foregoing, Chase is liable to Jimenez and the members of the New York Sub-Class for all damages suffered by Jimenez and the members of the New York Sub-Class that are available at law, in an amount to be determined at trial but believed to be no less than $25,000,000.

EIGHTH CLAIM FOR RELIEF

**Violation of Cal. Bus. & Prof. Code § 17200 *et seq*. – Unlawful, Fraudulent, and Unfair Business Act and Practices**

(on behalf of the California Sub-Class)

106.   Plaintiffs incorporate the allegations within all prior paragraphs within this  Complaint as if they were fully set forth herein.

107.   Defendants' acts and practices as described herein constitute unlawful, fraudulent, and/or unfair business acts and practices in violation of California Business and Professions Code § 17200, *et seq*.

108.   Bieghler and the members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of the conduct described herein.

109.    In particular, as a result of Defendants' violation of California Business and Professions Code § 17200, *et seq.*, Bieghler and the members of the California Sub-class incurred excess interest charges, late fees, and overdraft charges.

110.    By reason of the foregoing, Chase is liable to Bieghler and the California Sub-Class Plaintiffs for all damages Plaintiffs and the Class suffered and that are available at law in an amount to be determined at trial but believed to be no less than $25,000,000.

### NINTH CLAIM FOR RELIEF
### Violation of Cal. Bus. & Prof. Code § 17500 *et seq.* – False Advertising
(on behalf of the California Sub-Class)

111.    Plaintiffs incorporate the allegations within all prior paragraphs within this  Complaint as if they were fully set forth herein.

112.    As alleged herein, Defendants provided to the Bieghler and the members of the California Sub-Class false and misleading standardized representations and advertisements regarding the Same Day Payment Guarantee.

113.    Defendants knew or, in the exercise of reasonable care, should have known that such representations and advertisements were false.

114.    These representations and advertisements were material to Bieghler and the members of the California Sub-Class.

115.    As a result, Bieghler and the members of the California Sub-Class justifiably relied on such representations and advertisements and suffered injury as a result.

116.    As a result of Defendants' false advertising, Bieghler and the members of the California Sub-Class were fraudulently induced to believe they could make timely payments on their Chase Visa Accounts up until the Cutoff Time, and incurred excess interest charges, late fees, and overdraft charges because Chase failed to credit the Chase Visa Accounts as advertised.

24

117.    By reason of the foregoing, Chase is liable to Bieghler and the California Sub-Class Plaintiffs for all damages Plaintiffs and the Class suffered and that are available at law in an amount to be determined at trial but believed to be no less than $25,000,000.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs request that this Honorable Court enter judgment in their favor as follows:

A.  certifying the Nationwide Class, the New York Sub-Class, and the California Sub-Class as set forth herein;

B.  appointing Plaintiffs' Counsel as Class Counsel;

C.  awarding damages in an amount greater than $25 million;

D.  awarding punitive damages in an amount to be determined at trial;

E.  ordering Chase to disgorge the monies by which it has been unjustly enriched and return it, with interest, to Plaintiffs and the Class;

F.  awarding pre-judgment interest and post-judgment interest on all compensatory and punitive damages;

G.  awarding costs, expenses and attorneys' fees incurred by Plaintiffs and the Class; and

H.  awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action so triable.


Dated: February 11, 2013            Respectfully submitted,
New York, New York

                                    NAPOLI BERN RIPKA SHKOLNIK, LLP


                            By:     _____
                                    Marc J. Bern

mjbern@napolibern.com
Hunter J. Shkolnik
hunter@napolibern.com
Adam J. Gana
agana@napolibern.com
350 Fifth Avenue, Suite 7413
New York, New York 10118
(212) 267-3700  (Phone)
(212) 587-0031  (Fax)


Mitchell M. Breit
mbreit@hanlyconroy.com
Andrea Bierstein
abierstein@hanlyconroy.com
HANLY CONROY BIERSTEIN SHERIDAN FISHER &
HAYES LLP
112 Madison Ave., 7th Floor
New York, New York 10016
Tel:  (212) 784-6400
Fax:  (212) 213-5949

Chet Kern
winefly1@aol.com
KATZ & KERN, LLP
61 Broadway, Suite 3010,
New York, NY 10006
Tel: (212) 693-1330
Fax: (212) 693-1329


*Attorneys for Plaintiffs and the Putative Class and
Sub-Classes*